IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| DAPHNE NERO<br>18480 Haskins Rd.<br>Bainbridge, OH 44023<br><br>Plaintiff,<br><br>vs.<br><br>UNIVERSITY HOSPITALS HEALTH<br>SYSTEM<br>11100 Euclid Avenue<br>Cleveland, OH 44106<br><br>Serve: UNIVERSITY HOSPITALS<br>HEALTH SYSTEM<br>11100 Euclid Avenue<br>Cleveland, Ohio 44106<br><br>Defendant. | CASE NO.<br><br>JUDGE<br><br>**COMPLAINT AND FIRST SET<br>OF DISCOVERY REQUESTS**<br><br>(Jury Demand Endorsed Herein) |

Now comes Plaintiff, Daphne Nero, by and through the undersigned counsel, and for a

complaint against Defendant University Hospitals Health System, states and alleges the

following:

## PARTIES

1.     At all times relevant herein, Plaintiff was a resident of Ohio.

2.     At all times relevant herein, Plaintiff was an employee of University Hospitals

Health System (hereinafter "UH"), working at UPCP Geauga Internal Medicine.

3.     At all times relevant herein, upon information and belief, Defendant's principal

place of business was located in Cuyahoga County, Ohio.



## VENUE

4.      Venue properly lies in this Court, as, upon information and belief, Defendant's

principal place of business was located in Cuyahoga County, Ohio.

## FACTUAL ALLEGATIONS

5.      Plaintiff, age 43 at the time of her termination, is a member of a protected class

pursuant to Ohio Revised Code § 4412 *et seq.*.

6.      Plaintiff began working for Defendant in or around November 2000 as a Medical

Assistant.

7.      Beginning March 1, 2004, Plaintiff began experiencing health problems including

but not limited to suffering a heart attack for which she was admitted into the hospital and a bout

of excessive coughing that resulted in two fractured ribs.

8.      Plaintiff missed work during the majority of March 2004 because of her physical

ailments.

9.      Plaintiff's medical-related absences from work in March 2004 were based on the

orders of her treating physicians at the time.

10.     During Plaintiff's medical-related leave, Plaintiff and/or her physicians kept

Defendant apprised of Plaintiff's medical condition and leave status, and thus, Defendant was

aware that Plaintiff was missing work pursuant to her doctors' orders.

11.     On or around March 26, 2004, Plaintiff contacted Defendant about returning to

work upon her release to work from her doctor.

12.     Starting on or around March 26, 2004, Defendant and its agents became evasive

and noncommittal regarding Plaintiff's return to work.

2

13.     On or around April 20, 2004, Defendant terminated Plaintiff's employment because of alleged "errors" committed by Plaintiff regarding documentation at work and billing.

14.     The reasons provided for Plaintiff's termination are false and pretextual.

15.     Plaintiff's replacement was, upon information and belief, under age 40 and significantly younger than Plaintiff.

16.     Because Defendant employs more than 50 full-time employees, Defendant is an "employer" under the definition of that term as stated in the Family and Medical Leave Act of 1993 (herein after "FMLA"), 29 USC 2611.

17.     Because Plaintiff worked more than 12 months as a full time employee for Defendant before her medical leave of absence, she is a covered "employee" under the definition of that term as defined by the FMLA, 29 U.S.C. 2611.

## COUNT ONE
## (FMLA VIOLATION)

18.     Plaintiff reavers and realleges each and every paragraph above as if fully set forth herein.

19.     Plaintiff was qualified for the position of Medical Assistant.

20.     Defendant terminated Plaintiff because she took a legally protected medical leave of absence, and Defendant replaced her with an individual who, upon information and belief, did not recently take an FMLA leave of absence.

21.     Defendant's actions and inactions are in violation of 29 U.S.C.§ 2615, and Plaintiff has a remedy against Defendant  pursuant to 29 U.S.C. § 2617.

22.    The retaliatory conduct described above was engaged in recklessly, maliciously, and intentionally.

23.    Defendant's actions and inactions complained of above were so egregious, reckless, willful, and deliberate that Plaintiff is entitled to an award of compensatory and punitive damages.

24.    As a result of the foregoing actions of Defendant, Plaintiff has suffered damages including but not limited to loss of wages and mental anguish in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT TWO
### (Age Discrimination)

25.    Plaintiff reavers and realleges each and every paragraph above as if fully set forth herein.

26.    Plaintiff, a member of a protected class, was qualified for the position of Medical Assistant.

27.    Age was a motivating factor in the Defendant's decision to terminate Plaintiff and replace her with a significantly younger employee under the protected age of 40.

28.    The actions of Defendant described above in paragraphs one (1) through twenty-seven (27) hereinabove constitute age discrimination in violation of Ohio Rev. Code § 4112.02(A).

29.    The discriminatory conduct described above was engaged in recklessly, maliciously, and intentionally.

30.    Plaintiff has a remedy against Defendant pursuant to Ohio Rev. Code § 4112.99.

4

31.    Defendant's actions and inactions complained of above were so egregious, reckless, willful, and deliberate that Plaintiff is entitled to an award of compensatory and punitive damages under the provisions of Ohio's Civil Rights Act, in an amount to be determined at trial.

32.    As a result of the foregoing actions of Defendant, Plaintiff has suffered damages including but not limited to loss of wages and mental anguish in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## COUNT THREE
### (Violation of Public Policy)

33.    Plaintiff reavers and realleges each and every paragraph above as if fully set forth herein.

34.    The foregoing acts and actions of Defendant constitute a violation of Ohio's public policy as set forth in Ohio Rev. Code § 4112 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) et seq., as well as Ohio common law.

35.    As a result of Defendant's actions, Plaintiff has suffered economic damages in the form of back wages and front-pay in an amount to be determined at trial.

36.    Defendant's conduct as set forth above has also caused Plaintiff non-economic compensatory damages in the form of mental anguish and pain and suffering in an amount to be determined at trial.

37.    As a result of Defendant's conduct, Plaintiff is entitled to recover her attorney's fees and costs pursuant to § 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §200(e)(5)(k).

38.    Defendant's conduct as set forth above was willful and intentional and of the nature for which Plaintiff is entitled to recover punitive damages, including her reasonable and

5

necessary attorney's fees, expert fees and the cost of this action, in an amount to be determined at trial.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court:

A.     Order Defendant to make Plaintiff whole by providing compensation for violation of her civil rights, emotional distress, liquidated damages, and punitive damages in an amount in excess of $25,000.00;

B.     Award Plaintiff appropriate back pay, front pay, and reimbursement for lost wages in an amount to be proven at trial;

C.     Grant to Plaintiff her attorney's fees, costs, and disbursements;

D.     Award Plaintiff pre- and post-judgment interest at the prevailing rate; and

E.     Grant such further and additional relief as this Court deems just and proper.

Respectfully submitted,

Caryn M. Groedel 0060131
David J. Steiner 0075217
5910 Landerbrook Drive, Suite 200
Cleveland, OH 44124
Tel: 440-544-1122
Fax: 440-446-1240
Attorneys for Plaintiff

JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Caryn M. Groedel

1.    Pursuant to Rules 33 and 34 of the Ohio Rules of Civil Procedure, in answering the following Interrogatories and Requests for Production of Documents you are to furnish all information available to you or subject to your reasonable inquiry including information in the possession of your agents, employees, attorneys, and other persons directly or indirectly employed by or connected with you and anyone else otherwise subject to your control and to serve your answers, separately and fully in writing, under oath, upon Caryn M. Groedel, 5910 Landerbrook Drive, Cleveland, Ohio 44124, counsel for Plaintiff, within **twenty-eight days** from the date of actual service of these interrogatories and requests for production of documents.

2.    In answering these interrogatories and requests for production of documents, you must make a diligent search of your records, other papers and materials in your possession or available to you or to your representatives.  If the interrogatory has sub-parts, answer each part separately and in full and do not limit your answer to the interrogatory or request for documents as a whole.  If you are unable to answer in full any of these interrogatories, or respond in full to any of these requests to produce documents, you must answer and respond to them to the fullest extent possible, specifying the reasons for your inability to answer the remainder and stating the information, knowledge or belief you have concerning the unanswerable portion.

3.    If the information requested is not known or reasonably available in the precise form and scope requested, or for the particular date or period specified, but can be supplied partially, in a modified form or for a different but relevant date or period, set forth the best information available together with a statement of the reasons that the answer is not completely responsive to the interrogatory and/or document request together with the identity of any documents or sources from which more complete information is obtainable.

4.    Whenever an interrogatory or document request calls for information with respect to "each" one of a particular type of occurrence, communication or other matter of which more than one exists, identify separately, **and in chronological order**, each instance of the occurrences, communications or other matters referred to, and provide for each such instance all of the information called for immediately following such identification.

5.    To the extent, and only to the extent that an answer given to any of the interrogatories or document requests may be made responsively by reference to an answer to a prior interrogatory or document request, identify the interrogatory or document request response, and each part thereof, by stating the appropriate number designation, sub-letter designation, or both, and the page upon which your previous response appears.  **SHOULD YOU EXERCISE YOUR RIGHT UNDER ORCP 33 (c) to produce business records, identify each record "in sufficient detail to permit plaintiff to locate and to identify, as readily as can defendants, the records from which the answer may be ascertained."** In other words, identify which specific document or documents, produced in lieu of a written response, corresponds with which specific interrogatory request by identifying the interrogatory number, including the sub-part, to which the document is responsive.

6. To the extent that you believe that any of the interrogatories or document requests calls for information contained in documents or communications subject to a claim of confidentiality, trade secret, privilege, or work product, answer so much of such interrogatory or document request, and each subpart thereof, as does not request, in your view, allegedly confidential, secret, privileged, or work product information, and identify each such document and communication and set forth the basis for your claim of confidentiality, secrecy, or privilege with respect to the information which you refuse to furnish, with sufficient specificity so as to enable Plaintiff to understand the exact and complete nature of your claim, so that Plaintiff might exercise his right to challenge each such claim. With regard to each such document, state the date and nature of the document.

7. Each lettered subpart of a numbered interrogatory or request for documents is to be considered a separate interrogatory or request for documents for the purposes of objection. To the extent that you believe that any of the interrogatories or requests for documents is objectionable, answer so much of each such interrogatory, or respond to so much of each such document request, and each subpart thereof that is not, in your view, objectionable, and separately state the objection and each ground for each such objection to each subpart.

8. When referring to a conclusion, give all of the circumstances and facts upon which the conclusion is based or which relate to the conclusion.

9. In responding to each interrogatory or request for documents, identify the person(s) consulted in preparing the particular response, and, if different, the person(s) most familiar with the facts concerned.

10. You are requested to timely supplement the answers to all interrogatories requesting the identification of persons having knowledge of discoverable matters. Without being requested to do so, you must also amend any answer when it is discovered to be no longer true and if a failure to supplement is in substance a knowing concealment.

11. When asked to "identify" or "for the identity" of any natural person, set forth (i) the full name and present or last-known business and residence address and business and residence telephone numbers of such person; (ii) his or her present or last-known business affiliation; (iii) his or her present telephone number, with the area code prefix; and (iv) his or her position and business affiliation, including a description of his or her duties or responsibilities at the time of or during the period in question.

12. When asked to "identify" or "for the identity" of any entity other than a natural person, set forth its (i) full name or title; (ii) address, telephone number with area code prefix; (iii) date and jurisdiction under the laws of which it was organized or incorporated, or, in the case of any entity other than a corporation, state the type of organization, the names of its members, and the date and place of its organization; and (iv) the identity of all persons who acted or who authorized another to act on their behalf in connection with the matters referred to.

13.     When furnishing a copy of a document, specify the interrogatory and/or document request being responded to in this manner, and identify the document so supplied to show the interrogatory to which the document relates.  If a copy of a particular document is not available, then set forth  (i) its date and general type of category (e.g., letter, contract, memorandum);  (ii) the identity of its author and each person who aided or assisted in its preparation, including persons who contributed information contained in or submitted for use in such document;  (iii) the identity of each addressee and other distribute to whom the document was directed, distributed and by whom it was received, read, or both;  (iv) the identity of its last-known location or custodian;  (v) the reason or reasons for the inability to locate such document and the circumstances of its unavailability;  (vi) if the document is no longer in your possession or control and the circumstances of its disposition are known, set forth the date and circumstances of the disposition thereof, as well as the identity of the person or entity to whom custody or possession was given;  (vii) its subject matter and substance; (viii) if the document is one of a series of two or more pages contained in a book, pamphlet, binder or folder or, in the case of magnetic tape, microfilm, printouts, etc., is contained in a portion thereof, include in your identification of such document any available numerical reference (or other available descriptive aid) to the particular pages and lines or other portion thereof at which the information referred to in said interrogatory or request for documents or in your answer thereto appears; and  (ix) the subject matter and substance of any document of which a legible copy or other reproduction is annexed to the answers to these interrogatories or request for documents need not be stated.

14.     When asked to "identify" or "for the identity" of an oral communication, set forth (i) the date and place thereof or, in the case of a telephone conversation, so indicate and state the places at which the parties thereto were located at the time thereof; (ii) the identity of each person participating in or who was present during the communication or otherwise heard such communication; (iii) the complete substance of each statement attributed to each person participating therein in the sequence of such statements or, to the extent the foregoing particulars are not known or subject to reasonable ascertainment, the subject matter of such communication and as many of the requested particulars as are known or ascertainable; and (iv) identify, in accordance with the prior requirements hereof, all documents which may have been prepared on the basis of, as a consequence of, or which contain information relative to the specific details, subject matter or substance thereof.

15.     "Describe in detail," when the answer refers to an action which does not pertain to a document or other written or oral communication, means to provide a description of the action, when, where and how it occurred, taken together with the material, substances, equipment, machines, instruments, methods, and procedures used in connection with that action.  "Describe in detail," when a document or other written or oral communication is referred to in your answer, means to state:

a.     The type of document or other communication;
b.     The date made;
c.     The identity of any persons involved in the communication;
d.     Present location or possession of the document or written or other recorded evidence of communication;

3

e. Substance of matter contained in document or other communication, including factual setting in which it was made, substantive content and purpose of the communication;

f. The fact or facts which would tend to be established into evidence by each such document; and

g. The name, address and telephone number, occupation, job title, employer of each person whose testimony could be used to authenticate such document and lay the foundation for its introduction into evidence.

16. You are to designate which of such information is not within your personal knowledge, and as to that information you are to state the name and address of every person from whom it was received, or, if the source of the information is documentary, a full description of the document including its location.

17. With respect to each interrogatory, in addition to supplying the requested information and identifying the specifically referenced documents, identify and describe all documents to which you refer in preparing your answers.

## DEFINITIONS

A. The word "document" or "documents" refers to any printed, written, taped, recorded, graphic, computerized printout, or other tangible matter, from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received, or neither, including, but not limited to, the original, a copy (if the original is not available) and all non-identical copies (whether different from the original because of notes made on or attached to such copy or otherwise) or any and all writings, correspondence, letters, telegrams, cables, telexes, contracts, proposals, agreements, minutes, acknowledgments, notes, memoranda, analyses, projections, work papers, books, forecasts or appraisals, papers, records, reports, diaries, statements, questionnaires, schedules, computer programs or data, books of account, calendars, graphs, charts, transcripts, tapes, transcripts or records, photographs, pictures or film, ledgers, registers, worksheets, summaries, digests, financial statements, and all other information or data, records or compilations, including all underlying supporting or preparatory material now in your possession, custody or control, or available to you, your counsel, accountants, agents, representatives or associates. "Document" or "documents" specifically includes documents kept by individuals in their desks, at home or elsewhere.

B. The term "communication" or "communicate" includes or requests information relating to all oral communications and "documents" (as defined above), whether or not any such document, or the information contained therein, was transmitted by its author to any other person.

C. The term "defendant" means each defendant, jointly and severally, if more than one, as listed in the complaint.

4

D.     The term "meeting" or "meetings" refers to any meeting of any agent or employee or board member or combination of groupings of such agents, employees and/or board members, and will be specifically construed by defendants to include requests for all tape recordings and or written or other transcriptions of any such meetings, referencing by identification the particular date, time and substance of discussion at each such meeting, and any decisions made at any such meeting and who participated in any such decision and the particular input each person at such meeting had as to the particular decision; requests for all tape recordings and or written or other transcriptions of any such meetings, referencing by identification the particular date, time and substance of discussion at each such meeting, and any decisions made at any such meeting and who participated in any such decision and the particular input each person at such meeting had as to the particular decision.

E.     "You" and "your" shall mean the named defendants, their directors, officers and employees, and relevant agents, as well as any attorneys, experts, investigators or persons acting or purporting to act on their behalf.

F.     "Person" shall mean and include a natural person, partnership, firm or corporation or any other kind of business or legal entity, its agents or employees.

## INTERROGATORIES

1. Identify the person(s) supplying information for these interrogatories on behalf of Defendant, including in your answer each individual's social security number. If more than one person has supplied information, state the name of each person supplying information and the precise Interrogatory for which that person answering supplied information.
ANSWER:

2. Identify the name, address and phone number of each witness, whether lay or expert witness, upon whom Defendant expects to call to testify at trial.
ANSWER:

3. Identify each and every individual known to Defendant who has knowledge or information pertaining to the allegations set forth in the Complaint and/or Answer filed in this case, and for each person so identified, state the specific subject of the relevant information and state whether the information is based upon personal knowledge.
ANSWER:

4. Identify all persons who have commenced administrative or court action against Defendant University Hospitals Health System ("UH") since January 1998 alleging any violation of the Family and Medical leave Act of 1994 ("FMLA"), age discrimination, and/or violation of public policy, together with the name of the administrative agency or court, the identifying charge number or case number, and a brief description of the nature of the action and its outcome.
ANSWER:

5. Identify (see definition of identify in preamble) all persons who have worked at Defendant's UPCP Geauga Internal Medicine since November 1, 2000, including in your answer the current home and work addresses, and current home and work telephone numbers of all individuals referred to in your answer to this interrogatory.
ANSWER:

6. State whether Defendant has any policy, policies, or agreements for insurance under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse Defendants for payments made to satisfy a judgment in this case, and if so, identify each such policy or agreement separately, specifying the following:

    (a) the person and/or company underwriting the policy or agreement;

6

(b) the dollar limits on liability under the policy or agreement;

(c) the amount of any deductible before paying all or part of any judgment herein under the policy or agreement; and

(d) the starting date the policy or agreement went into effect and the date of its cancellation, if applicable.

ANSWER:

 

7. Identify any and all benefits Plaintiff would be entitled to if she was still employed by Defendant, including salary or other payments, vacation pay, sick pay, insurance coverage, bonuses, retirement benefits, and any other employer contributions on behalf of Plaintiff, and **state the value of those benefits both in dollar value (cost to Defendant) and as a percentage of Plaintiff's salary.**
ANSWER:

 

8. Identify each employee of Defendant's UPCP Geauga Internal Medicine facility who has left the employ of Defendant, either voluntarily or involuntarily, from January 2000 to the present. In addition to the information requested in Definitions/Instructions, provide each person's last position with Defendant, date of separation, and reason for separation (e.g. retirement, discharge), and age. If the person was involuntarily separated from employment, please provide a detailed explanation for the discharge or termination decision and identify the persons that were involved or participated in the decision.
ANSWER:

 

9. State the full name, last known address, and telephone number of each and every person known to Defendant or its agents, servants, employees, or attorneys who

was present during the incidents giving rise to Plaintiff's claim of FMLA retaliation, age discrimination, and/or violation of public policy, or has knowledge relating to these claims, and describe such persons' knowledge of such incidents.

ANSWER:

10.  Identify each of Defendant's employees or former employees whom Defendant has contacted regarding the claims in this case, and for each such employee or former employee, state the date and substance of each communication, and whether the statement was oral or written.

ANSWER:

11.  During the period of 1998 to the present, identify any employee of Defendant UH who complained to management or to any other employee about any FMLA violation, age discrimination, and/or violation of public policy, including in your answer a detailed explanation of the complaint, when the complaint was made, and how the issue was resolved.

ANSWER:

12.  Provide a detailed explanation of the events leading to Plaintiff's termination, including why she was terminated, when she was terminated, and who made the decision to terminate her.

ANSWER:

13. Identify the individual(s) responsible for training supervisory personnel on issues of FMLA retaliation and/or age discrimination during the period of Plaintiff's employment with Defendant.
ANSWER:

14. Identify the individual(s) responsible for training non-supervisory personnel on issues of FMLA retaliation and/or age discrimination during the period of Plaintiff's employment with Defendant.
ANSWER:

15. Identify each and every document consulted in connection with preparation of the answers to these Interrogatories.
ANSWER:

16. Identify each and every document provided herewith, including in your answer who prepared each document, when it was prepared, and who can authenticate each such document.
ANSWER:

17. Identify each and every person who assumed Plaintiff's job duties after her termination.
ANSWER:

9

## REQUESTS FOR THE PRODUCTION OF DOCUMENTS

1.  All personnel handbooks, manuals, employment policies or pamphlets, and all work rules and regulations, including amendments and updates, in effect or in use for the past five years.

2.  All documents identified, referred to or replied upon in Defendant's answers to Plaintiff's First Set of Interrogatories.

3.  Pursuant to Plaintiff's claim for punitive damages, produce copies of all annual financial statements of Defendant showing Defendant's assets, gross income, net income, liabilities and net worth, prepared any time from January 1999 to the present.

4.  Plaintiff's personnel file.

5.  All notes, documents, records, reports, memoranda regarding Plaintiff that is not contained her personnel file, from the time she commenced employment with Defendant to the present.

6.  Investigative reports, notes, memos, records, etc. pertaining to any and all complaints of FMLA retaliation, any violation of FMLA, and/or age discrimination during the past 8 years at Defendant, and the results thereof.

7.  All benefit handbooks, manuals, policies or pamphlets, including amendments and updates, in effect or in use at Defendant for the past five years that are and were applicable to the Plaintiff.

8.  All communications by Defendant's employees, management, and board of directors, including but not limited to e-mail messages and letters, pertaining to Plaintiff's employment with Defendant.

9.  Provide a copy of any policy, policies, or agreements for insurance under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse Defendant for payments made to satisfy a judgment in this case.

10.  A copy of Plaintiff's job descriptions for all positions she held with Defendant.

10

11. A copy of the personnel files and job descriptions for all of the individuals who assumed any of Plaintiff's job responsibilities after her termination from Defendant.

12. A copy of all documents that show the alleged "errors" for which Plaintiff was terminated.

13. A copy of all memos, letters, notes, reports or other documentation discussing, addressing, mentioning, or referring to the decision to terminate Plaintiff.

14. All of Plaintiff's FMLA documentation and other documentation pertaining to Plaintiff's leave of absence.

## REQUESTS FOR ADMISSIONS

1. Do you admit that all documents or other tangible items of any kind that Defendants have produced to Plaintiff during discovery are true and authentic copies kept in the ordinary, regular, and usual course of the business of Defendant? (If any documents or tangible items are not admitted to be true and authentic and kept in the ordinary, regular, and usual course of Defendant's business, please identify each such document(s) or tangible items(s) and indicate why Defendant is unable to admit the authenticity of such document or tangible item or why Defendant is unable to admit that such documents) or tangible item(s) was kept in the ordinary, regular and usual course of Defendant's business).
ANSWER:


2. Admit or deny Defendant was aware Plaintiff missed work in March 2004 pursuant to her doctors' orders.
ANSWER:


3. Admit or deny that Plaintiff did not engage in patient billing when she was employed by Defendant.
ANSWER:

4. Admit or deny that Plaintiff was accused of improperly billing a patient shortly before her termination.
ANSWER:


5. Admit or deny that, in or around March-April 2004, Defendant accused Plaintiff of committing workplace errors that allegedly occurred in or around September 2003.

ANSWER:

Respectfully submitted,

Caryn M. Groedel (0060131)
David J. Steiner (0075217)
Caryn Groedel & Associates, Co. LPA
5910 Landerbrook Drive, Suite 200
Cleveland, Ohio 44124
(440) 544-1122
Attorneys for Plaintiff

12

5. On one patient, Ms. Nero wrote 'Chris Walker' on the requisition instead of 'Sue Walker.' It is difficult for me to believe that such a minor mistake, given as a reason for termination, is anything other than pretextual.

6. Progressive discipline was not followed as outlined in UH's Policy No. 606.1.

7. Ms. Nero has **evidence** that you and Nancy Marella were planning on finding a way to terminate Ms. Nero's employment after her leave of absence, and that you were trying to document, document, document, in an effort to cover your unlawful motive.

This action on the part of UH is in direct violation of the Family and Medical Leave Act. Ms. Nero would have a cause of action for violation of that Act, violation of Ohio's public policy, and promissory estoppel based on the failure to follow the progressive discipline policy.

Ms. Nero was told to contact he Human Resource Department in accordance with Policy 607.1. However, Ms. Nero does not have a copy of that policy. Therefore, please consider this an objection or appeal of the termination decision pursuant to 607.1. Please also consider this a good faith effort to resolve this issue without litigation. In an effort to try to resolve this amicably. I would ask that you call me by week's end to discuss these issues and determine if we can reach a mutually agreeable resolution.

Very truly yours,

Caryn M. Groedel

Caryn M. Groedel

CMG:jm