IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAPHNE NERO, | ) | CASE NO. 1:04 CV 1833 |
| | ) | |
| Plaintiff, | ) | JUDGE ANN ALDRICH |
| | ) | |
| vs. | ) | **PLAINTIFF'S MOTION TO** |
| | ) | **COMPEL DISCOVERY** |
| UNIVERSITY HOSPITALS HEALTH | ) | **RESPONSES FROM** |
| SYSTEM, INC., et al., | ) | **DEFENDANTS** |
| | ) | |
| Defendants. | ) | |

I.      **BACKGROUND AND CERTIFICATE OF GOOD FAITH**

Plaintiff, Daphne Nero, has four pending claims against Defendants: FMLA violations, age discrimination, violation of public policy, and COBRA violations.  Plaintiff filed her complaint and first set of discovery on August 11, 2005.  Defendants produced Responses to Plaintiff's Interrogatories and Requests for the Production of Documents on January 24, 2005.

On February 11, 2005, Plaintiff's counsel sent Defendants' counsel a letter outlining the numerous deficiencies in Defendants' responses.  (Ex. 1, 2-11-05, letter.)  That same day, Defendants' counsel sent Plaintiff's counsel a letter acknowledging receipt of the letter and anticipating that they would have a response to Plaintiff by February 17, 2005.  (Ex. 2, 2-11-05, letter.)  After hearing no response from Defendants, Plaintiff's counsel sent Defendants' counsel a letter asking again for the outstanding discovery.  (Ex. 3, 2-23-05, letter.)  The next day Defendants' counsel sent Plaintiff's counsel a letter stating that they "assumed that discovery issues were no longer urgent" because the depositions had been postponed until April.  (Ex. 4, 2-24-05, letter.)  On March 3, 2005, Defendants' counsel finally responded to Plaintiff's counsel's February 11th letter. (Ex. 5, 3-3-05, letter.)  In that letter, Defendants re-asserted several of their objections and requested a telephone conference to discuss a majority of the interrogatories and document requests.

On April 6, 2005, Plaintiff's counsel and Defendants' counsel held a telephone conference to discuss the outstanding discovery.  Many of the discovery disputes were not resolved due to Defendants' counsel's insistence that Defendants should not have to produce the requested discovery because they allege that their client terminated Plaintiff for a legitimate reason. Plaintiff's counsel stated that notwithstanding Defendants' allegations, they must respond to Plaintiff's First Set of Discovery.  Plaintiff's counsel also informed Defendants' counsel that Plaintiff would serve Defendant with a Second Set of Discovery Requests seeking discovery regarding Defendants' allegations about the reason for Plaintiff's termination.

Plaintiff then filed her Second Set of Discovery Requests on April 15, 2005.  Along with Plaintiff's Second Set of Discovery, Plaintiff's counsel sent Defendants' counsel another letter briefly outlining the major outstanding issues with Defendants' Responses to Plaintiff's First Set of Discovery.  (Ex. 6, 4-15-05, letter.)  On May 12, 2005, after receiving no further discovery from Defendants, Plaintiff's counsel engaged in another telephone conference with Defendants' counsel. Similar to the first telephone conference, Defendants' counsel again insisted that Defendants should not have to disclose the sought after discovery because they allege that Plaintiff was terminated for a legitimate reason.  Plaintiff's counsel again stated that Plaintiff will not forego her day in court on the unsubstantiated allegations of Defendants and their attorneys.  Defendants' counsel again promised to produce the requested discovery.

On May 16, 2005, the day Defendants' responses to Plaintiff's Second Set of Discovery was due, Plaintiff's counsel sent Defendants' counsel a letter once again requesting that Defendants make good on their many promises that discovery would be forthcoming.  (Ex. 7, 5-16-05, letter.) The letter asked that Defendants produce responsive discovery for Plaintiff's First and Second Sets of Discovery by May 23, 2005.  On May 23, counsel held another telephone conference during which Defendants' counsel again promised to produce the requested discovery.

On June 2, 2005, after having received no further discovery from Defendants, Plaintiff's counsel prepared a Motion to Compel Discovery Responses from Defendants.  That same day, just before the Motion was to be filed, Defendants' counsel called Plaintiff's counsel and promised that the discovery would be produced on June 6, 2005.

On June 7, 2005, Defendants produced Responses and Objections to Plaintiff's Second and Third Set of Discovery Requests.  In addition, Defendants produced one document responsive to Plaintiff's First Set of Discovery Requests.[1]  On June 13, 2005, Plaintiff sent Defendants a letter outlining a few deficiencies in Defendants' responses to Plaintiff's Second Set of Discovery, and stating that Defendants neglected to respond to almost all of Plaintiff's issues regarding Plaintiff's First Set of Discovery.  To this date, Defendants have not responded to Plaintiff's letter, except for stating in a voice mail message on June 16, 2005, that they would respond to Plaintiff's most recent letter.

Despite Defendants' counsel's **many** promises that the information and documents requested by Plaintiff in her First Set of Discovery Requests, Plaintiff has received almost no responsive discovery.  In fact, the only discovery Defendants have produced, other than what they produced on June 7, 2005, were the self-serving, hand-selected documents that suddenly appeared as Exhibits at Plaintiff's deposition.  **The documents used at Plaintiff's deposition were not produced in discovery prior to Plaintiff's deposition and Defendants gave no reason why said documents had been withheld until her cross-examination.**

Clearly, Plaintiff's counsel have made many written and verbal attempts to resolve these discovery disputes.  Plaintiff's counsel engaged in several telephone conferences with Defendants' counsel each time each time attempting to make good faith efforts to negotiate discovery disputes.

---

[1] Defendants produced one performance evaluation, name redacted, for what appears to be Plaintiff's replacement. Since the name is inappropriately redacted, Plaintiff has no way to confirm whose performance evaluation was produced by Defendants on June 7, 2005.

Each time, Defendants' counsel insist that they should not have to bother their client with Plaintiff's discovery requests because they believe Plaintiff was terminated for a legitimate reason.  Each time, Plaintiff's counsel states the obvious: that Plaintiff's position differs from that of Defendants, that Plaintiff should not be expected to drop her lawsuit based on the opinion of Defendants' attorneys, and that Defendants must produce proof of their assertions by participating in full discovery.  Each time, Defendants' counsel promises to produce further discovery.

Plaintiff has been extremely patient, Plaintiff has made every effort to resolve these discovery disputes, and Plaintiff has given Defendants a multitude of chances to produce the requested discovery.  Plaintiff now sees no other option but to file this Motion to Compel and ask that this Court order Defendants to produce the requested discovery.


II.     **THE RULES OF DISCOVERY REQUIRE DEFENDANTS TO RESPOND**

Ohio Rule of Civil Procedure 26(b)(1) permits discovery of matters not privileged which are relevant to the subject matter involved in the pending action, and goes on to state that:

> It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

This rule, like all rules pertaining to discovery, is to be accorded broad and liberal treatment. Hickman v. Taylor, 329 U.S. 495, 507, 67 S.Ct. 385, 391 (1947).  The term "relevant" in Rule 26(b)(1) should be interpreted "very broadly" to mean matters relevant to anything that is or may become an issue in the litigation.  See, e.g., Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389 (1978), discussing Federal Rule 26(b)(1), which is identical to Ohio Rule 26(b)(1).  "The purpose of the liberal discovery policy contemplated by the Ohio Rules of Civil

Procedure is the narrowing and sharpening of the issues to be litigated." <u>State ex. rel. Daggett v. Gessaman</u>, 34 Ohio St.2d 55, 56, 295 N.E.2d 659 (1973).

III.    **PLAINTIFF'S DISCOVERY REQUESTS**

Defendants' answers to Plaintiff's First Set of Interrogatories were not verified.  Answers to interrogatories submitted to a party pursuant to Ohio Civ. R. 33 must be signed and verified by the oath of the person making such answers.  <u>Hensley v. Fairview Park Hospital</u>, 26 Ohio Misc. 128 (Ohio Misc., 1970).  Therefore, Plaintiff requests that this Court order Defendant to provide all answers and supplemental answers to interrogatories in verified form.

A.    **PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**Interrogatory No. 4:**  Identify all persons who have commenced administrative or court action against Defendant University Hospitals Health System ("UH") since January 1998 alleging any violation of the Family and Medical leave Act of 1994 ("FMLA"), age discrimination, and/or violation of public policy, together with the name of the administrative agency or court, the identifying charge number or case number, and a brief description of the nature of the action and its outcome.

**Comment:**  Defendants objected to this Interrogatory and limited their response to information pertaining to UPCP Geauga Internal Medicine, the location where Plaintiff was employed.  This limited response, however, is not sufficient in that Plaintiff is entitled to the requested information company-wide for the past seven years.

Plaintiff's requests at bar are almost identical to the discovery requests in <u>Davis v. Outback Steakhouse of Florida, Inc.</u>, 97-CVC08-7537 (Franklin Cty. Common Pleas Oct. 30, 1998).  In that case, the plaintiffs requested prior complaints, charges, and/or claims of sex discrimination and/or sexual harassment that were filed against defendants.  <u>See id</u>. at 5.  The Common Pleas Judge ordered the defendants to produce, **company-wide**, all such state or federal employment agency

reports and documents regarding lawsuits for a period of seven years (five years before the incidents at issue.)  See Id. at 5-7.  See also Payne v. Honda of America Mfg., Inc., C-2-94-762 (S.D. Ohio Nov. 5, 1995) (ordering defendants to produce copies of all charges filed with the EEOC or the OCRC and the captions of each lawsuit alleging discharge because of the employees' race along with the disposition of each charge and/or lawsuit).

Plaintiff is requesting information within the last eight years, a request that is not overbroad. Events taking place before the statute of limitations period, although not actionable in themselves under the statute of limitations, may be admitted to shed light on the true nature of the matters occurring within the limitations period.  See, e.g., Scandanavian Health Spa, Inc. v. Ohio Civil Rights Commission, 64 Ohio App.3d 480, 581 N.E.2d 1169 (1990); Local Lodge No. 1424, Internatl. Ass. of Machinists, AFL-CIO v. Natl Labor Relations Bd., 362 U.S. 411, 80 S.Ct 822 (1960).

The requested information is relevant.  It may, among other things, illuminate a pattern of FMLA violations, age discrimination violations, and or violations of public policy at Defendant UH.  Moreover, events occurring prior to Plaintiff's employment are relevant and admissible even though not actionable.

Moreover, a pattern of discrimination, if proved by a succession of lawsuits, is relevant. Phillip v. ANR Freight Systems, Inc., 945 F.2d 1054 (8th Cir. 1991).  In Phillip, the court held that the lower court's refusal to admit evidence at trial of other age discrimination suits against appellee had been reversible error.  Id.  The Phillip court reversed the lower court's decision and remanded the case back to trial, noting that, "The admission of such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive." Id. at 1056.

6

Therefore, Plaintiff respectfully requests that this Court order Defendants to fully respond to Interrogatory No 4 and include information relating to **all** relevant actions against Defendant company-wide since January 1998.

**Interrogatory No. 6:**  State whether Defendant has any policy, policies, or agreements for insurance under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse Defendants for payments made to satisfy a judgment in this case, and if so, identify each such policy or agreement separately, specifying the following:

    (a) the person and/or company underwriting the policy or agreement;
    (b) the dollar limits on liability under the policy or agreement;
    (c) the amount of any deductible before paying all or part of any judgment herein under the policy or agreement; and
    (d) the starting date the policy or agreement went into effect and the date of its cancellation, if applicable.

**Comment:** Defendants failed to answer this interrogatory.  This interrogatory does not ask Defendants to make a determination of liability.  This interrogatory asks whether Defendant has any policies or agreements for insurance that **may be liable** for part or all of a judgment entered in this action.

Furthermore, although not relevant at trial, information regarding the insurance coverage of a respondent/defendant is clearly discoverable.  Evans v. Grange Mut. Casualty Co., 12 Ohio Misc. 108  (Summit County 1964) (The limits of liability insurance coverage held by a prospective defendant in an action for a tort which would be covered thereby is a fact material to the conduct of the litigation, although it may not be admitted into evidence at the trial.)

Therefore, Plaintiff respectfully requests that this Court order Defendants to fully answer this interrogatory in verified form.

**Interrogatory No. 7:**  Identify any and all benefits Plaintiff would be entitled to if she was still employed by Defendant, including salary or other payments, vacation pay, sick pay, insurance coverage, bonuses, retirement benefits, and any other employer contributions on behalf of Plaintiff,

and **state the value of those benefits both in dollar value (cost to Defendant) and as a percentage of Plaintiff's salary.**

**Comment:**  Defendants failed to answer this interrogatory on the basis that it allegedly seeks information that is protected by the attorney-work product doctrine.  The requested information is not attorney work-product because the question is directed at Defendants, not at Defendants' counsel.

Defendants referred Plaintiff to her personnel file and the employee policies and procedures manual.  However, those documents do not adequately answer this interrogatory.

This information is necessary for Plaintiff's expert to prepare a report on the value of her total lost compensation.  As the actual cost and value information is entirely within Defendants' control and/or custody, Plaintiff requests that this Court order Defendants to answer this interrogatory in verified form, including the following information in their answer:

> **1)** any and all benefits Plaintiff would be entitled to if she was still employed by Defendant; **2)** include salary or other payment, vacation pay, sick pay, insurance coverage, bonuses, retirement benefits, and any other major contributions on behalf Plaintiff; **3)** state the value of Plaintiff's benefits (such as health insurance) both in dollar value (cost to Defendant) and as a percentage of Plaintiff's salary.

**Interrogatory No. 8:**  Identify each employee of Defendant's UPCP Geauga Internal Medicine facility who has left the employ of Defendant, either voluntarily or involuntarily, from January 2000 to the present.  In addition to the information requested in Definitions/Instructions, provide each person's last position with Defendant, date of separation, and reason for separation (e.g. retirement, discharge), and age.  If the person was involuntarily separated from employment, please provide a detailed explanation for the discharge or termination decision and identify the persons that were involved or participated in the decision.

**Comment:** Defendants objected to this Interrogatory and limited their response to individuals working at UPCP Geauga Internal Medicine's Chardon and Rock Creek offices since 2003.  This limited response, however, is not sufficient.

Plaintiff has brought claims for age discrimination, FMLA, COBRA, and public policy violations. Plaintiff is entitled to information relating to voluntary and involuntary terminations from 2000 to the present in that she may inquire into whether any of these terminations also involved age discrimination, FMLA or COBRA violations, and/or public policy violations.  Such information is relevant because it could demonstrate Defendants' knowledge of a widespread problem at Defendant UH.

The names and addresses of discharged employees is relevant to the subject matter of this action, for instance, the employees might have knowledge of other discoverable matters.  Hoffman-LaRoache, Inc. v. Sperling, 493 U.S. 165, 170, 51 FEP 853 (1989) (the discovery of the names and addresses of other discharged employees ruled relevant).

Plaintiff is requesting information for the past five years, a request that is not overbroad.  In Trevino v. Celanese Corp., 701 F.2d 397 (5th Cir. 1983), a Title VII employment case, the plaintiff sought to discover information regarding the defendant's past and present employment practices. The trial court limited discovery to two years preceding the filing of plaintiff's suit.  In reversing, the Fifth Circuit referenced the need for an expanded scope of discovery in Title VII cases and added, "[t]he imposition of unnecessary limitations on discovery is especially frowned upon" in such cases.  Id. at 405-406.

Moreover, Plaintiff is not requesting company-wide information.  Plaintiff requests this information for the entire department so she may compare her termination and the reasons provided for it to the termination of other UH employees and the alleged reasons for those terminations. Beyond exposing any widespread age discrimination and/or FMLA retaliation at UH, this information may demonstrate that the reasons provided for Plaintiff's termination are pretextual.

Therefore, Plaintiff respectfully requests that this Court order Defendants to fully answer to this interrogatory in verified form.

9

**Interrogatory No. 12:**  Provide a detailed explanation of the events leading to Plaintiff's termination, including **why** she was terminated, **when** she was terminated, and **who** made the decision to terminate her.

**Comment:**  Defendants failed to fully answer this Interrogatory.  Defendants' answer is unacceptable in that it fails to state information necessary for Plaintiff to make further decisions in the discovery process.  Namely, Defendants refuse to answer **when** Plaintiff was terminated and **who** made the decision to terminate her.

The Civil Rules do not state that a party may avoid answering an Interrogatory simply because the Interrogatory requests information that may be asked about at deposition.  It has been held that the fact that a party has a choice between interrogatories and depositions does not bar the use of interrogatories.  Babcock Swine, Inc. v. Shelbco, Inc., 126 F.R.D. 43 (S.D. Ohio 1989)(criticizing Penn Central Trans. Co. v. Armoco, 27 Ohio Misc. 76 (1971)).

Furthermore, Defendants failed to fully identify the individual/s who made the decision to terminate her.  (See Plaintiff's comment to Interrogatories Nos. 1, 3, and 17.)  This information is necessary for Plaintiff to determine who to depose.

Therefore, Plaintiff respectfully requests that this Court order Defendants to provide an answer to this interrogatory in verified form, including a detailed explanation of events leading up to Plaintiff's termination, any alleged investigations relating to Plaintiff's discharge,  the identities of anyone spoken to by management during the investigations, the identities of the individuals conducting the investigation, and the identities of the individuals who made the decision to terminate Plaintiff, along with corresponding dates.

### B.     <u>REQUESTS FOR THE PRODUCTION OF DOCUMENTS</u>

**Document Requests No.1:** All personnel handbooks, manuals, employment policies or pamphlets, and all work rules and regulations, including amendments and updates, in effect or in use for the past five years.

**Document Request No. 7:**  All benefit handbooks, manuals, policies or pamphlets, including amendments and updates, in effect or in use at Defendant for the past five years that are and were applicable to the Plaintiff.

**Comment:**  Defendants objected to these Document Requests and agreed to produce the responsive documents in effect at the time of Plaintiff's termination.

Defendants' proposal to limit these document requests is unacceptable.  This information is necessary for Plaintiff's expert to prepare a report on the value of her total lost compensation.  Since Plaintiff claims that Defendants violated FMLA and COBRA laws, it is important that Plaintiff have access to Defendants' policies and practices.  It is necessary for Plaintiff to review previous employment policies and regulations that might indicate a lack of effort to comply with FMLA, COBRA, and discrimination laws.

Therefore, Plaintiff respectfully requests that this Court order Defendants to produce the requested documents for the past five years that are and were applicable to the Plaintiff.

**Document Request No. 3:**  Pursuant to Plaintiff's claim for punitive damages, produce copies of all annual financial statements of Defendant showing Defendant's assets, gross income, net income, liabilities and net worth, prepared any time from January 1999 to the present.

**Comment:**  Defendants objected to this Document Request and failed to respond.

Information concerning the net worth of defendants is discoverable at the pretrial stage where the party requesting discovery has made a claim for punitive damages.  See, eg., Manning v. Len Immke Buick (Franklin Cty. 1971), 276 N.E. 2d 253, 257; Sample v. Keystone Carbon Co., 58 FEP Cases 650 (W.D. Pa. 1992).   In the case at hand, Plaintiff is seeking punitive damages.  Defendants' financial status is entirely relevant and the financial statements are reasonably calculated to lead to the discovery of admissible evidence at trial.  See Ohio Civ. R.26(b)(1).

Lastly, this document request is seeking financial records kept in the ordinary course of business.  Records kept in the ordinary course of business are not protected work product. In re Keough (1949), 151 Ohio St. 307, Dayton v. Smith (1959), 109 Ohio App. 383.

Plaintiff therefore requests that this Court order Defendants to fully respond to this Document Request by producing financial statements and other such relevant documents.

**Document Request No. 8:**  All communications by Defendant's employees, management, and board of directors, including but not limited to e-mail messages and letters, pertaining to Plaintiff's employment with Defendant.

**Document Request No. 13:**  A copy of all memos, letters, notes, reports or other documentation discussing, addressing, mentioning, or referring to the decision to terminate Plaintiff.

**Comment:**  Defendants objected to these Document Requests and stated that they would provide Plaintiff's personnel file.  This response is unacceptable and non-responsive.  Document Request Nos. 8 and 13 are not asking for Plaintiff's personnel file    Furthermore, Plaintiff produced in discovery an email correspondence written by Defendants regarding her employment and pending termination.  Said email was not produced by Defendants even though they claim to have produced all relevant documents regarding the claims and defenses in this case.

Therefore, Plaintiff requests that this Court order Defendants to respond to these document requests.

**Document Request No. 9:**  Provide a copy of any policy, policies, or agreements for insurance under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse Defendant for payments made to satisfy a judgment in this case.

**Comment:**  For the reasons set forth in Plaintiff's comment to Interrogatory No. 6, Plaintiff requests that this Court order Defendants to produce all responsive documents to this document request.

**Document Request No. 11:** A copy of the personnel files and job descriptions for all of the individuals who assumed any of Plaintiff's job responsibilities after her termination from Defendant.

**Comment:** Defendants objected to and failed to respond to this Document Request. Defendant did provide one evaluation, presumably for Plaintiff's replacement Kathleen Lane. The name on the evaluation has been redacted. This is inappropriate. There is no reason to redact the name on the evaluation. Furthermore, Plaintiff cannot establish that the document is actually the evaluation for her replacement if the name is redacted.

For this reason, Plaintiff requests that the Court order Defendants to produce another copy and to only redact social security numbers and medical information. In addition, Plaintiff requests the personnel file of everyone who assumed Plaintiff's job duties after her termination, including but not limited to Kathleen Lane. Plaintiff also requests the job applications of her potential replacements, including but not limited to Kathleen Lane's application.

**Disclosure of personnel files is favored in employment cases**. See Coughlin v. Lee, 946 F.2d 1152 (5th Cir. 1991)(Rejecting lower court's attempt to narrow discovery to files of employees); see also Weakhee v. Norton, 621 F.2d 1080 (10th Cir. 1980)(Disclosure is favored even in the face of confidentiality statute).

Clearly, personnel files of managers, decision makers, **and individuals who receive positions over a discrimination plaintiff are relevant and discoverable in employment cases, as are the employment applications and resumes of those who applied for the position at issue.** See, Irvin v. Goodyear Tire and Rubber Co. (S.D. Ohio 1998) Case No. 2:97-CV-1397, slip op. at 3 (unreported, attached)

Therefore, Plaintiff respectfully requests that this Court order Defendants to produce all documents responsive to this document request.

## C.      PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS

**Interrogatory No. 7:**  Identify all UHMSO employees terminated by Petra Bosinger since the beginning of her employment with Defendant, including the dates of such terminations and a detailed explanation of why each employee was terminated.

**Comment:**  Defendants refused to fully answer this Interrogatory even though the requested information is clearly relevant and reasonably calculated to lead to the discovery of admissible evidence.

Evidence of discrimination by the same decision-maker is relevant as background evidence of discrimination in this case and is circumstantial evidence of discriminatory intent.  Furthermore, "[a] decision-maker's self-interested testimony about his own thoughts is not unassailable; direct evidence of discriminatory intent is hardly ever available so a plaintiff generally resorts to circumstantial evidence to show what the decision-maker had in mind.  Covington v. MCI Worldcom Network Servs., 93 Fed. Appx. 837, 841 (6th Cir., 2004) (citing to Kline v. TVA, 128 F.3d 337, 348 (6th Cir. 1997)).

Moreover, Plaintiff can submit evidence of other facts of discrimination at trial as circumstantial evidence to support an inference that the plaintiff was discriminated against.  See, e.g., Shattuck v. Kinetic Concepts, Inc., 49 F.3d 1106 (5th Cir. 1995) (ruling that evidence of how the employer treated other older employees may be "highly probative" of how plaintiff was treated). See also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804-05 (1973) (noting that plaintiffs may demonstrate pretext by tracing how employers treated other minorities); Polanco v. City of Austin, 78 F.3d 986, 980 (5th Cir. 1996); Grano v. Dep't of Dev. of Columbus, 637 F.2d 1073 (6th Cir. 1980).

Therefore, Plaintiff respectfully requests that this Court order Defendants to provide the identity of all UHMSO employees terminated by Petra Bosinger since the beginning of her

14

employment with Defendant, including the dates of such terminations and a detailed explanation of

why each employee was terminated.

**Interrogatory No. 8:**  Identify all persons who have commenced administrative or court action against either Defendant since January 1999 alleging any violation of COBRA, together with the name of the administrative agency or court, the identifying charge number or case number, and a brief description of the nature of the action and its outcome.

**Comment:**  Defendants stated the following in response to this interrogatory: "UHMSO states that

no other person has commenced an administrative action or court action against UPCP Geauga

Internal Medicine, the location where Plaintiff was employed, alleging a violation of COBRA."

For the same reasons as set forth in the comment to Interrogatory No. 4 from Plaintiff's First

Set of Discovery Requests, Plaintiff respectfully requests that this Court order Defendants to fully

answer this interrogatory on a company-wide basis.

**Document Request No.  3:**  Provide University Hospital Health System/UHMSO's complete medical file of Robert Gibbs, including but not limited to all electronic notes and all handwritten notes, records of doctor visits, and prescription history.  This request includes but is not limited to records of Mr. Gibbs as a patient of Drs. Molin, Whitney, and Jawa.

**Comment:**  Defendants provided the medical records for Mr. Gibbs but they were incomplete as

they are missing Dr. Jawa's notes.  Plaintiff has personal knowledge that some of Dr. Jawa's notes

were contained in the records file for Mr. Gibbs and were in the custody and control of Defendants.

These notes, however, were not produced in discovery.

The requested documents are relevant in that Defendants allege that Plaintiff did not follow-

up on a specialist referral for Mr. Gibbs to Dr. Jawa and that Mr. Gibbs' missed referral allegedly

caused his death.  These allegations are unsubstantiated and Plaintiff emphatically denies that any of

these allegations are true.

Therefore, Plaintiff respectfully requests that Defendants produce all the documents

responsive to this document request, including but not limited to Dr. Jawa's notes.

**IV.**     **CONCLUSION**

For the reasons set forth above, Plaintiff respectfully requests that this Court grant her

Motion to Compel Discovery Responses from Defendants and order Defendants to fully respond to

Interrogatories Nos. 4, 6, 7, 8, 12, and 16, and Document Requests Nos. 1, 7, 3, 8, 13, 9, and 11

from Plaintiff's First Set of Discovery Requests; and Interrogatories Nos. 7, and 8, and Document

Request No. 3 from Second Set of Discovery Requests.  Plaintiff further requests that this Panel

order Defendants to provide verification for all answers and supplemental answers.


                           Respectfully submitted,

                           s/Caryn M. Groedel (#0060131)
                           Caryn Groedel & Associates Co, LPA
                           5910 Landerbrook Dr, Suite 200
                           Cleveland, Ohio  44124
                           Tel:  (440-544-1122)
                           E-mail:  cgroedel@groedel-law.com
                           **Attorney for Plaintiff**


**CERTIFICATE OF SERVICE**

On June 16, 2005, I electronically filed a copy of a Plaintiff's Motion to Compel Discovery Responses from Defendants.  Notice of this filing will be sent to all parties through the Court's electronic filing system.  Parties may access this filing through the Court's system.


                           s/Caryn M. Groedel
                           CARYN M. GROEDEL